PEOPLE v HARRIS

Docket No. 63687. Submitted February 14, 1983, at Detroit.—Decided July 20, 1983.

Benson Harris was convicted of carrying a concealed weapon, Wayne Circuit Court, Henry J. Szymanski, J. Defendant appeals, alleging several errors. *Held:*

1. The trial court erred in excusing the production of a res gestae witness without making a determination that the prosecution had exercised due diligence in attempting to locate and produce the witness. The case is remanded for a hearing on due diligence, which is a question for the court, not for a jury. Should the prosecution fail to meet its burden of showing due diligence in the efforts to produce this witness, a new trial will be required.

2. The defendant failed, by lack of objection at trial, to preserve for review the issue of whether the prosecution exercised due diligence in attempting to identify an unknown res gestae witness. Under the circumstances herein, the trial court did not err in denying the defendant's motion for endorsement of that witness.

3. The trial court did not abuse its discretion in admitting evidence of a prior conviction for purposes of impeaching the defendant's testimony.

4. The prosecutor, by means of limited redirect examination, was properly allowed to correct certain misleading impressions raised by defense counsel in cross-examination.

Remanded.

1. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — DUE DILIGENCE.

The burden is on the prosecution to show that due diligence was

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 29 Am Jur 2d, Evidence §§ 180, 181, 708 *et seq.*
  81 Am Jur 2d, Witnesses § 2.
[3] 41 Am Jur 2d, Indictments and Informations § 134.
[4] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*
[5] 29 Am Jur 2d, Evidence § 320 *et seq.*
[6] 81 Am Jur 2d, Witnesses § 434.

exercised in an attempt to produce a res gestae witness; failure to meet this burden requires a new trial where a defendant has been convicted in a trial wherein a pivotal res gestae witness whose testimony would have been unique was not produced.

2. Criminal Law — Witnesses — Res Gestae Witnesses — Due Diligence.

The question of whether due diligence was exercised in the attempt to produce a res gestae witness is for the court, not the jury.

3. Criminal Law — Witnesses — Unknown Witnesses.

A prosecutor must endorse on an information the names of all witnesses known to him at the time of filing the information, but has no duty to endorse the names of witnesses whose identity he does not know nor must he produce an unknown witness; however, a prosecutor is required to exercise due diligence in seeking to ascertain the identities of witnesses.

4. Appeal — Harboring Error.

Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure.

5. Criminal Law — Evidence — Prior Convictions.

The decision of a trial court regarding the admission of evidence of a defendant's prior convictions will not be reversed absent an abuse of discretion.

6. Witnesses — Discrepancies in Testimony.

Witnesses are permitted to explain discrepancies in answers elicited from them on cross-examination.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Civil and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Gail Rodwan),* for defendant on appeal.

Before: J. H. Gillis, P.J., and D. E. Holbrook, Jr., and Gribbs, JJ.

PER CURIAM. The defendant, Benson Harris, was convicted by a jury of carrying a concealed weapon contrary to MCL 750.227; MSA 28.424. He was sentenced to 1-1/2 to 2-1/2 years imprisonment and appeals as of right.

## I

The defendant first alleges that the trial court abused its discretion when it held that the prosecution was excused from producing a res gestae witness because the testimony would have been cumulative. The absent witness, Gloria Minnifield, flagged down the arresting officer, Henry Harris, as he was traveling in a marked police car. Officer Harris testified that he was off duty, driving through the City of Highland Park, when a screaming woman ran into the street in front of his vehicle, forcing him to stop. She pounded on the hood, was yelling loudly and indicated that there was a man with a gun who was either going to kill or wanted to kill her. She then pointed to the defendant and identified him as the gunman. Minnifield, still screaming, told Officer Harris that the gun was under a coat that the defendant was carrying. Officer Harris parked the car and called to defendant, who had just stopped a Checker taxicab. The defendant ran to the cab and threw his coat in the window and then immediately pulled the coat back out. The cab driver turned around, reached back and threw a .38-caliber revolver out of the car, saying "man, don't throw that in here". The driver drove away as he threw the gun out, the weapon hit the ground and Minnifield reached for the gun. Officer Harris took the gun, stopped a "struggling match" between the defendant and Minnifield and arrested the defendant.

The facts clearly demonstrate that Gloria Minnifield is a res gestae witness, she being present at all times prior to and during the asserted time of the criminal act and during the arrest of defendant. When Minnifield did not appear on the day of trial, the defendant's counsel requested a due diligence hearing, and the court proceeded to such hearing pursuant to *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973).

At the hearing, officers testified that Minnifield was served with a subpoena, but that repeated efforts to contact her by telephone were unsuccessful. The evidence further showed that the officers made no personal contact with members of the witness's family. No inquiry as to her whereabouts was made with the witness's neighbors.

At the conclusion of the hearing, the court did not reach the diligence question, stating "I don't think due diligence is a factor in this case at all".

While a due diligence determination was avoided, the court did in fact excuse the presence of the witness Minnifield, holding that her testimony would have been "merely cumulative". The court indicated that the events which transpired when Minnifield was present were "not necessarily relevant or germane" and her production was, therefore, not essential. No evidence was presented to demonstrate that Minnifield's testimony would have been cumulative and the court, at that time, was without facts to so rule. A careful reading of the testimony indicates that Minnifield was a pivotal witness in this case. She alone allegedly saw and identified a man with a gun; her testimony would have been unique, not cumulative.

Accordingly, this matter is remanded for a hearing to determine whether the prosecutor failed to exercise due diligence in the production of a res

gestae witness, adversely affecting the defendant's right to a fair trial pursuant to *People v Pearson,* 404 Mich 698; 273 NW2d 856 (1979). The burden is on the prosecution and any failure to meet this burden will require a new trial.

We wish to note that at trial the court permitted the attorneys to argue the question of due diligence before the jury, and defense counsel claimed that the police were less than diligent in their efforts to produce Minnifield. In rebuttal, the prosecutor argued that the police made proper efforts. Permitting the jury to determine the issue of due diligence was error. Due diligence is a question for the court and not for the jury. *People v Pearson, supra.*

## II

The defendant next claims that the trial court erred when it excused the production of an unnamed res gestae witness (the cab driver) without making an inquiry about the prosecutor's efforts to locate the witness. At the preliminary examination, Officer Harris testified that he was probably three feet from the cab when it stopped. He did not get the license number, nor had he any idea from whence the cab came. Harris saw the gun for the first time in the cab driver's hand when it was thrown out the window. The cab driver left immediately and Officer Harris did not get any information from him. He explained that the cab was stationary for only 15 to 20 seconds and that the driver drove off as he simultaneously tossed the gun from the window. Harris further explained that his attention was focused on the struggle between the defendant and Minnifield over the coat defendant held and on three other people in the area who were arguing and shouting. He testi-

fied that he did not have time to yell to the driver to come back.

At the beginning of the trial, defense counsel moved to have the cab driver endorsed as a res gestae witness. The prosecutor stated that after talking with the officer in charge and Officer Harris he was informed that it was impossible to locate the cab driver or determine his identity because of the circumstances surrounding the case. He asserted that the police did everything they could. The trial court noted that there was no opportunity to identify the cab driver and ruled that although he was a res gestae witness to at least some of the events he was unavailable to the prosecutor by any means of discovery of which the court was aware. The trial court denied defense counsel's motion to endorse the witness.

The prosecutor must endorse on the information the names of all witnesses known to him at the time of filing. However, the prosecutor has no duty to endorse the names of witnesses whose identity he does not know. *People v June,* 34 Mich App 313; 191 NW2d 52 (1971). In addition, the prosecutor need not produce an unknown witness. *People v Mack,* 64 Mich App 587; 236 NW2d 523 (1975). However, the prosecutor is also required to exercise due diligence in seeking to ascertain the identities of any witnesses. *People v Fiorini,* 85 Mich App 226; 271 NW2d 180 (1978).

Although defense counsel requested the hearing, he failed to pursue the issue of due diligence. The defense also failed to take issue with the prosecutor's conclusionary statements regarding the impossibility of identifying or locating the cab driver. The defense acquiesced in the facts as presented and allowed the prosecutor's statements to go unchallenged. The trial court quite naturally ren-

dered a decision based upon the discussion on the motion. The defendant has failed to preserve this issue for review. The action and inaction of the defense has the appearance of creating error. "Counsel cannot sit back and harbor error to be used as an appellate parachute in the event of jury failure." *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969).

## III

The defendant next asserts that the trial court erred when it held that evidence of his prior conviction was admissible for impeachment purposes.

It is clear from the record that the trial court was advised of and weighed the various conflicting factors concerning admissibility of evidence of a prior conviction. *People v Crawford,* 83 Mich App 35, 39; 268 NW2d 275 (1978). The armed robbery conviction was not substantially similar to the crime charged in the instant case. At trial even defense counsel could not bring himself to make such an assertion, conceding that the only common thread that ran through both offenses was the possession of a gun. In addition, it is unclear from the record whether the weapon involved in the armed robbery conviction was a gun or some other dangerous weapon. The decision of the trial court will not be reversed absent an abuse of discretion. *People v Wilson,* 107 Mich App 470, 475; 309 NW2d 584 (1981).

Although the judge did not articulate the weighing of the probative value against the prejudicial effect of admitting the evidence, it is clear from the record that he understood and exercised this responsibility. We find no abuse of discretion.

## IV

The defendant next asserts that error occurred when the trial court permitted a limited redirect examination concerning a police report and denied defense counsel's request for a cautionary instruction on that document. A careful reading of the testimony on this issue reveals that defense counsel delved into a report that a police officer had prepared and by his cross-examination led the jury to believe that the offense took place at a location other than the one described by Officer Harris. The report, in fact, dealt with another complaint dealing with a different incident. The trial court permitted the prosecutor to correct certain misleading impressions that defense counsel had raised and the redirect examination was limited to this matter. Witnesses are permitted to explain discrepancies in answers elicited on cross-examination. See *People v Babcock,* 301 Mich 518, 529; 3 NW2d 865 (1942). The defendant's argument is without merit.

This matter is remanded to the trial court for further proceedings consistent with this opinion.